UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**BRUCE LEDERER,**

    **Plaintiff,**

**V.**                                        **Case No:  2:11-cv-510-FtM-SPC**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**
_____/

## ORDER

This matter comes before the Court on Plaintiff, Bruce Lederer's Complaint seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's claim for disability insurance (Doc. #1) filed on September 12, 2011.  The Plaintiff filed his Brief in Support of the Complaint (Doc. #23) on May 11, 2012.  The Commissioner filed a Memorandum in Support of the Commissioner's Decision (Doc. #24) on July 10, 2012.  The Parties consented to jurisdiction by United States Magistrate Judge, which was approved by the District Court.  (Doc. #15).  Thus, the case is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

# FACTS

### *Procedural History*

The Plaintiff filed an application for a period of disability and disability insurance benefits on December 11, 2003. (Tr. 14). The claim was denied initially on September 3, 2004, and upon reconsideration on June 3, 2005. (Tr. 14). The Plaintiff filed a written request for hearing on July 28, 2005. (Tr. 14). On January 31, 2008, a hearing was held before the Honorable Dawn B. Lieb, Administrative Law Judge. (Tr. 14). The ALJ issued an unfavorable decision on May 16, 2008. (Tr. 29). The Plaintiff filed a Request for Review on June 9, 2008. (Tr. 10). The Appeals Council denied the Plaintiff's Request for Review. (Tr. 7-9). Therefore, the decision of the Commissioner became final. Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court. (Doc. #1).

### *Plaintiff's History*

The Plaintiff was born on December 9, 1951, making the Plaintiff forty-nine (49) years of age on the alleged disability onset date. The Plaintiff alleges an onset disability date of July 2, 2001. (Tr. 14). The Plaintiff has at least a high school education and is able to communicate in English. (Tr. 27). The Plaintiff has past relevant work experience as a corrections officer. (Tr. 27). The Plaintiff alleges disabilities due to back disorder (degenerative disc disease), Raynaud's Syndrome, and bilateral carpal tunnel syndrome.

### *Medical History*

The medical evidence of record reveals that the Plaintiff has been diagnosed with insulin dependent diabetes mellitus (IDDM), a history of pancreatitis, chronic obstructive pulmonary disease (COPD), and Barrett's Esophagus Syndrome. (Tr. 16, 226, 228, 253, 326). Upon examination on August 24, 2004, Patrick A. Ijewere, M.D., opined a diagnosis of pancreatitis.

(Tr. 253). Due to episodes of dyspnea and severe fatigue, the Plaintiff was referred to Pulmonary Consultants. (Tr. 226). Testing revealed clinical features suggestive of hyperreactive airway disease with associated COPD. (Tr. 228). Subsequent testing by Associates in Digestive Health included an upper gastrointestinal endoscopy and esophagogastroduodenoscopy, which led to a diagnosis of Barrett's Esophagus Syndrome. (Tr. 326).

The Plaintiff's medical record includes a reference to an on-the-job injury on October 23, 1997, at which time the Plaintiff was treated for a right-shoulder injury. (Tr. 201). Upon examination on October 27, 1997, the Plaintiff's treating physician at Columbia Care noted that the Plaintiff's shoulder was tender to palpation at the acromioclavicular (AC) joint. (Tr. 201). An MRI report dated February 18, 1998, revealed a severe impingement in the Plaintiff's right shoulder and mild AC joint separation. (Tr. 221). The medical evidence of record reveals that the Plaintiff was treated conservatively for his shoulder injury by John C. Kagan, M.D. (Tr. 205-09). Upon examination on March 5, 1998, Dr. Kagan noted that the Plaintiff had a limited range of motion and function in his right shoulder and subsequently diagnosed the Plaintiff with adhesive capsulitis. (Tr. 221).

A medical report from Dr. Kagan dated June 2, 2000, reveals that by that time, the Plaintiff demonstrated good range of motion in his right shoulder and that the capsulitis of the right shoulder had resolved. (Tr. 208). However, the Plaintiff continued to complain of right shoulder pain. (Tr. 208). Dr. Kagan noted that an MRI study of the Plaintiff's cervical spine conducted on April 26, 1999, revealed mild stenosis at the C5-C6 level due to C5-C6 disc bulging and facet hypertrophy. (Tr. 208). A subsequent x-ray report of the cervical spine from Radiology Regional Center dated June 30, 2005, revealed disc space narrowing and spurs formation at C4-C5, C5-C6, and C6-C7, which led to a diagnosis of spondylosis. (Tr. 405). On

May 12, 2005, the Claimant saw John A. White, M.D., with complaints of continuing shoulder pain. (Tr. 407).

The medical evidence of record reveals that the Plaintiff has been diagnosed with depression and anxiety. (Tr. 432, 383). On June 15, 1998, the treating physicians at Medical Associates of Lee County diagnosed the Claimant with anxiety. (Tr. 432). In addition, the Plaintiff's treating physician at Family Health Center of Southwest Florida proffered a diagnosis of depression on January 11, 2005. (Tr. 383). These diagnoses are further corroborated by the consultative examinations proffered by Paul J. Miske, Ph.D., and John J. White, Ph.D. (Tr. 233, 293). Furthermore, Dr. White proffered a diagnosis of a depressive disorder and a panic disorder without agoraphobia subsequent to his evaluation performed on May 9, 2005. (Tr. 292). In addition to the consultative examinations as mentioned above, the Plaintiff was also evaluated by Ivan L. Mazzorana, Jr., M.D., and Harald W. Lettner, Ph.D. (Tr. 312, 315). Dr. Mazzorana opined that the Plaintiff suffers from a pre-existing history of a probable bipolar disorder and a mixed personality disorder; whereas, Dr. Lettner diagnosed the Plaintiff with a schizotypal personality disorder. (Tr. 314, 317).

### *Administrative Law Judge's Decision*

Upon consideration of the record, the ALJ found the Plaintiff met the insured status requirements of the Social Security Act through June 30, 2006. (Tr. 16). Furthermore, the ALJ found that the Plaintiff has not engaged in substantial gainful activity (SGA) since his alleged onset date of July 2, 2001. (20 CFR 404.1571 *et seq.*). (Tr. 16). The ALJ concluded that the Plaintiff had the following severe impairments: insulin dependent diabetes mellitus since 1982; history of pancreatitis; chronic obstructive pulmonary disease; Barrett's Esophagus Syndrome; cervical spondylosis secondary to C5-C6 stenosis; bilateral shoulder adhesive capsulitis;

depression; and anxiety (20 CFR 404.1520(c)).  (Tr. 16).  However, through the date last insured, the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  (Tr. 17).  After careful consideration of the entire record, the ALJ found that through the date last insured, the Plaintiff had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).[1]   (Tr. 19).

In addition, the ALJ found that through the date last insured, the Plaintiff was unable to perform any past relevant work (20 CFR 404.1565).  (Tr. 27).  The Plaintiff was born on December 9, 1951, making the Plaintiff 49 years old on the alleged disability onset date, which is defined as a younger individual age 18-49 and was 54 years old on his date last insured, which is defined as a person closely approaching advanced age (20 CFR 404.1563).  (Tr. 27).  Furthermore, the Plaintiff has a high school education and is able to communicate in English (20 CFR 404.1564).  (Tr. 27).  The ALJ also found that the transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the Plaintiff has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).  (Tr. 27).  Through the last date insured, considering the Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, and 404.1568(d)).  (Tr. 29).  Therefore, the Plaintiff was not under a disability, as defined in the Social Security Act, at any

---

[1] This includes: being able to lift/carry 20 pounds occasionally, 10 pounds frequently; standing/walking for 2 hours in an 8-hour day and sitting 6 hours in an 8-hour day, but must be able to alternate between sitting and standing; not reaching, pushing, or pulling at or above the shoulder level with the upper extremities; only occasional climbing, balancing, stooping, kneeling, crouching, crawling, or bending; avoiding even moderate exposure to fumes, odors, and dusts and avoiding concentrated exposure to moving machinery; and being limited to unskilled work.

time from July 2, 2001, through June 30, 2006, the date last insured (20 CFR 404.1520(g) (Tr. 28).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Commissioner, WL 4365647 *2 (M.D. Fla. December 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[2] 20 C.F.R. §§ 404.1520(a), 404.920(a). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, WL 4365647 *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

---

[2] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
  *Step 1.* Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
  *Step 2.* Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
  *Step 3.* Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
  *Step 4.* Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
  *Step 5.* Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n. 8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence or substitute its judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n. 8; Dyer v. Barnhart, 357 F. 3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

## **DISCUSSION**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505−404.1511.

The Plaintiff sets forth two main issues, which he indicates make remand of his case proper. First, the Plaintiff argues that "the ALJ erred by failing to address the opinion of medical advisors to the State Disability Determination Service that the Plaintiff would have moderate limitations in pace and persistence". (Doc. #23, p. 6). Second, the Plaintiff argues that the ALJ

erred by relying "on testimony from a vocational expert which was (a) in response to an incomplete hypothetical, (b) in response to a limitation for which the vocational expert did not understand the definition as set forth in the social security regulations , [and] (c) was facially inconsistent with the dictionary of occupational titles." (Doc. #23, p. 8). In response, the Commissioner argues the "ALJ's RFC finding accounted for Plaintiff's moderate limitations in the area of concentration, persistence, or pace." (Doc. #24, p. 4). Furthermore, the Commissioner argues "the ALJ properly relied on the [Vocational Expert's (VE)] testimony." (Doc. #24, P. 8). The Court will consider each of these issues in turn.

### *1. Whether the ALJ Erred by Failing to Address the Opinion of Medical Advisors*

The Plaintiff argues that the ALJ failed to "address the opinion of medical advisors to the State Disability Determination Service that the Plaintiff would have moderate limitations in pace and persistence." (Doc. #23, p. 6). Specifically, the Plaintiff states: "[t]he ALJ should have made findings as to Dr. Putney's opinion that the Plaintiff would have moderate limitations in being able to perform tasks for extended periods and to perform at a persistent pace." (Doc. #23, p. 7). To support this argument, the Plaintiff quotes Social Security Ruling 96-6. Numerous courts in this District have held that SSR 96-6 requires the ALJ to not only consider the program physicians' opinions because these physicians are considered experts, but the ALJ must also state, in his decision, the weight he has given to those opinions. See Wainwright v. Commissioner, 2007 WL 708971 at *2 (11th Cir. Mar. 9, 2007); Goberman v. Apfel, 2001 WL 267209 (M.D. Fla. Mar. 12, 2001).

While substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician, unless there is good cause to do otherwise, (Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir.1991); 20 C.F.R.

§ 404.1527(d)), the ALJ may discount a physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. Natale v. Commissioner, 2008 WL 227957 *6 (M.D. Fla. Jan. 25, 2008). When a physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). Furthermore, the weight afforded a physician's opinion depends upon the extent by which it is supported by clinical or laboratory findings and is consistent with other evidence in the record. Wheeler v Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

The DDS non-examining physicians in this case were Martha W. Putney, Ph.D., and Nancy Dinwoodie, M.D. Dr. Putney and Dr. Dinwoodie both opined that the Plaintiff would be mildly limited in his ability to perform activities of daily living and mildly limited in his ability to maintain social functioning. (Tr. 26). The ALJ cited that Dr. Putney found that Plaintiff would have moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 27). Plaintiff argues that the ALJ should have made findings as to Dr. Putney's opinion that the Plaintiff would have moderate limitations in being able to perform tasks for extended periods and to perform at a persistent pace. (Doc. #23, p. 7).

In this case, the ALJ considered and stated the weight given to Dr. Putney's opinion regarding the Plaintiff based on the above factors. Specifically, the ALJ stated that she granted limited weight to the assessments proffered by Dr. Putney and Dr. Dinwoodie. (Tr. 26). The ALJ stated that the assessment done by Dr. Putney was "based on the medical evidence of record

and was completed without the benefit of an evaluation of the claimant." (Tr. 27). The ALJ is free to discount a physician's opinion or report if it is unsupported by objective medical evidence or is wholly conclusory. In any event, the ALJ incorporated the moderate limitations in concentration, persistence, or pace into her RFC finding by limiting Plaintiff to "unskilled work, i.e., he is able to remember locations and work-like procedures; understand, remember, and carry out short, simple 1-2 step instructions; perform simple repetitive tasks; and to deal with standardized situations." (Tr. 21-22).

After this discussion in the ALJ's opinion, the ALJ stated that the evidence of record in its entirety supported the finding that the Plaintiff was capable of performing a wide range of light work. (Tr. 27). Therefore, because the ALJ properly considered and stated the weight given to Dr. Putney's opinion, and in fact incorporated Plaintiff's moderate limitations in his RFC finding, the ALJ's opinion is supported by substantial evidence.

### 2. Whether the ALJ Properly Relied on the Vocational Expert's Testimony.

With regard to the VE's testimony, the Plaintiff contends the ALJ committed three errors. First, the Plaintiff argues "the hypothetical to the vocational expert was incomplete and the ALJ erred by relying on an opinion from a vocational expert based on an incomplete hypothetical." (Doc. #23, p. 9). Second, the Plaintiff contends the VE's testimony should be supplemented to include testimony regarding the difference between constant and frequent handling. Third, the Plaintiff argues the ALJ erred by relying on facially erroneous testimony of the vocational expert. The Court will consider each of these issues in turn.

#### (a) Incomplete Hypothetical

As stated above, the Plaintiff first argues the ALJ erred by relying on an opinion from a VE based on an incomplete hypothetical. Specifically, the Plaintiff states "the ALJ did not make

findings as to the Plaintiff's ability to perform tasks over extended periods of time or perform at a consistent pace [in the hypothetical to the VE]." (Doc. #23, p. 9).  The ALJ's hypothecial upon review of the hearing transcript shows the following:

> Q: . . . I'm going to limit him to unskilled work.  Remember location – understand, remember, and carry out instructions/locations, but they need to be short, simply instructions.  Remember locations and worklike procedures, involved repetitive takes, standardized situations.  Okay. Such a hypothetical person can't return to his past relevant work.  His past relevant work is at medium. Okay.
> A: Correct.
> Q: Other work?
> A: Yes.  Information clerk, <u>DOT</u> 237.367-022, approximately 3,000 in Florida, approximately 120,000 nationally.  Hotel clerk, sedentary, well over 5000 – <u>DOT</u> 238.367-038, over 5,000 in Florida, sedentary, about 425,000 nationally, as examples.

(Tr. 467).  The ALJ further asked:

> Q: Wait a minute. I mean, the sit/stand option is going to be that he needs the opportunity to change position every 30 minutes.
> A:  Frequently, yeah.
> Q: And that rules out what?
> A: I would take the information clerk out of there.  That is usually pretty sedentary.
> [. . . .]
> Q: Okay. What are you replacing it with?
> A: Just as an example, the inspecting jobs, as long as we keep the atmospheric restriction in mind, which is going to reduce the number somewhat.  There would still be approximately 1,000, and the <u>DOT</u> category for inspector is 604.684-010.  Still be at least 1,000 in Florida, still be at least 80,000 nationally, that would stay.
> Q: I'm – this individual's unable to work an eight-hour day.  Going to change your answer?
> A: Yes.
> Q: If I have someone with a light RFC, same as one, but occasionally could carry 20 pounds, frequently 10, still – if, if he sits six, stands two, that puts him  back to sedentary, doesn't it? Same as sedentary?
> A: Pretty much –
> Q: Yeah.
> A: -- yes, it does.  It would open up some more jobs, but pretty much.

(Tr. 476-77).

The Eleventh Circuit requires that in cases where the ALJ finds that the Plaintiff has moderate limitations in concentration, persistence, or pace in the Psychiatric Review Technique

11

(PRT), the ALJ should address these limitations, either explicitly or implicitly, in the RFC finding or hypothetical question to the VE. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180-81 (11th Cir. 2011). The Eleventh Circuit has held that an "ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies." Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872 (11th Cir. 2011).

In this case, the ALJ included Plaintiff's limitations in his hypothetical to the VE when he stated: "Remember location – understand, remember, and carry out instructions/locations, but they need to be short, simply instructions. Remember locations and worklike procedures, involved repetitive takes, standardized situations." (Tr. 467). Further, the ALJ incorporated Plaintiff's moderate limitations in concentration, persistence, or pace into his RFC finding by limiting Plaintiff to "unskilled work, i.e., he is able to remember locations and work-like procedures; understand, remember, and carry out short, simple 1-2 step instructions; perform simple repetitive tasks; and to deal with standardized situations." (Tr. 21-22). Therefore, as the ALJ addressed these limitations, he complied with Winschel.

(b) Supplemental Vocational Expert Testimony

Additionally, Plaintiff argues that the VE's testimony was flawed because it did not account for Plaintiff's limitation to frequent handling and fingering. Specifically, that the VE failed to use the terms "frequent" and "constant" in accordance with the Social Security Regulations. (Doc. #23, p. 10). Plaintiff argues that because the "vocational expert did not know the difference between frequent and constant," this case "should be reversed and remanded with direction to the ALJ to obtain supplemental vocational expert testimony." Id. Plaintiff

alleges disability due to back disorder (degenerative disc disease), Raynard's Syndrome, and bilateral carpal tunnel syndrome.

In her hypothetical question to the VE, the ALJ included the limitation of "handle and finger to frequent." (Tr. 475).  With that hypothetical, one of the jobs the VE testified that the Plaintiff could perform was "inspector," DOT 604.684-010, and "light assembler," DOT 706.687-010, which Plaintiff argues involves constant handling and fingering, even though the hypothetical individual posed to the VE could only handle and finger frequently.  The review of the testimony shows that Plaintiff's counsel then examined the VE, stating:

> Q: Wouldn't the light assembly job require almost constant handling and fingering?
> A: There would be quite a bit of it, yes, but she said frequent handling and fingering were okay.
> Q: Well, but, I mean, if you're assembling something, you're doing it in a production schedule, normally, and so, you're going to be doing it on a constant basis, are you not?
> A: I don't disagree with you. I agree with you. But the –
> Q: Okay.
> A: -- hypothetical said frequent handling and fingering were okay.
> Q: Well, there is a difference between frequent and constant, is there not?
> ALJ: Yes.
> BY ATTORNEY:
> Q: So, how can you – if it's constant, how can you say it qualifies, when the Judge gave you, frequent?
> A: They're pretty similar to me, I guess it's a difference in interpretation.

(Tr. 478-79).

Hypothetical questions asked by the ALJ to the vocational expert must describe, comprehensively, the claimant's impairments. <u>Loveless vs. Massanari</u>, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001) (citing <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1652 (11th Cir. 1985) (per curiam)).  If the hypothetical question upon which the vocational expert bases his evaluation does not assume all of a claimant's impairments, the decision of the ALJ denying a claimant's applications for disability insurance benefits, which is based significantly on the expert

testimony, is not supported by substantial evidence. Loveless, 136 F. Supp. 2d at 1250. Notwithstanding, the foregoing general standard, the hypothetical question posed by the ALJ may omit non-severe impairments. Id. When using a VE, the ALJ must pose hypothetical questions to the VE to determine whether someone with the same limitations as the claimant will be able to secure employment in the national economy. Humphries v. Barnhart, 183 F. App'x 887, 891 (11th Cir. 2006) (citing Phillips v. Barnhart, 357 F. 3d 1232, 1239 (11th Cir. 2004)). That hypothetical question must include all of the claimant's impairments. Humphries, 183 F. App'x at 891 (citing Wilson v Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) cert. denied, 529 U.S., 120 S. Ct. 1723, 146 L. Ed. 2d 664 (2000). However, the ALJ need only include the claimant's impairments as opposed to each and every symptom allegedly suffered by the claimant but either not supported by medical records or alleviated by medication. Ingram v. Commissioner of Social Security, 496 F.3d 1253, 1270 (11th Cir. 2007).

With regard to the fingering limitation, in her opinion, the ALJ discounted the limitation, stating: "Lawrence M. Gustin, M.D., opined that the claimant would be limited to frequent climbing, balancing, stooping, kneeling, crouching, and crawling. He further opined that the claimant was limited in his ability for fingering and far acuity and that he should avoid concentrated exposure to extreme cold and heat, humidity, fumes, and hazards. The undersigned has given these opinions little weight." (Tr. 26). Even though the ALJ gave little weight to the limitations in Plaintiff's ability for fingering, she included such a limitation in her hypothetical to the VE, and then later excluded the limitations from her RFC finding. Therefore, it is unclear from the record whether the ALJ considered Plaintiff's fingering limitations to be of any degree

that would affect the number of jobs Plaintiff would be able to perform in the national economy. Therefore, the Court finds that remand on this issue is proper.

(c) DOT Job Description

Finally, the Plaintiff argues that "[b]ecause it is apparent the vocational expert was referring to a different job contained in the Dictionary of Occupational Titles than the job of parking lot attendant, [the VE's] testimony is facially in error." (Doc. #23, p. 11). Specifically, the Plaintiff cites to the DOT description of parking lot attendant that does not appear to include sitting in a kiosk, as the VE testified to. Furthermore, the Plaintiff points to a job entitled "cashier II," that allegedly sounds like the description of the job the VE testified was parking lot attendant. However, the Plaintiff contends that the job of cashier II "has a reasoning level of 3, which is inconsistent with a claimant who is unable to perform more than 1-2 step simple, routine, repetitive tasks." (Doc. #23, p. 11).

With regard to when the VE's testimony conflicts with the DOT, the Eleventh Circuit held that the VE's testimony trumps the DOT. Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 662 (11th Cir. 2007) (citing Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999)). The VE's testimony controls because the VE's task is to determine whether there are jobs in the region which the claimant can perform with his precise disabilities or limitations. Id. Further, the Court of Appeals noted that the DOT states it is not a comprehensive source of information and that it should be supplemented with local job information. Lipson v. Barnhart, 347 F. Supp. 2d 1182, 1189 (M.D. Ala. 2004). The VE provides this vital supplemental information. Id. at 1189. Therefore, an ALJ may rely on the VE's testimony even if it is inconsistent with the DOT. Jones, 190 F.3d at 1229.

Additionally, SSP 00-4p provides that "[w]hen a [vocational expert] . . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] . . . . evidence and information provided in the [Dictionary of Occupational Titles]." SSR 00-4p at *4. SSR 00-4p further provides that the adjudicator "will ask" the vocational expert "if the evidence he or she has provided" is consistent with the *Dictionary of Occupational Titles* and obtain a reasonable explanation for any apparent conflict. Id.

In this case, the ALJ specifically asked the VE whether the "testimony today is consistent with the SCO and DOT," to which the VE replied "[i]t is." (Tr. 483). In addition, it appears the VE supplemented local job information into the DOT job description by referencing to the difference between being a parking lot attendant at the City of Palms Parking Garage, versus a local country club. (Tr. 481). Thus, by supplementing local job information into the parking lot attendant job description, the VE believed that there were local parking lot attendant jobs, such as at a country club, that fit the Plaintiff's limitations of only being able to perform no more than 1-2 step simple, routine, and repetitive tasks. Therefore, based on the Eleventh Circuit's ruling in Miller, the ALJ did not commit an error by relying on potentially conflicting testimony from the VE. The ALJ fulfilled her responsibility under SSR 00-4p of asking the VE to identify any inconsistencies or conflicts that existed between his testimony and the DOT.

Accordingly, it is now

**ORDERED:**

The case be **REMANDED** to the Commissioner to consider whether Plaintiff's limitations in his ability to handle and finger affect his RFC. The Clerk of the Court is hereby directed to issue a judgment consistent with this ruling and to thereafter **CLOSE** the file.

**DONE** and **ORDERED** in Fort Myers, Florida this  2nd  day of October, 2012.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  All Parties of Record